# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

SANDRA ROBERTS,

    Plaintiff,

v.

JASON SPIELMAN,

    Defendant.

CASE NO. 5:09-CV-248 (HL)

## ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 7) and Defendant's Motion for Summary Judgment (Doc 15). For the reasons discussed herein, both Motions are denied.

## I. FACTS

Plaintiff alleges that Defendant violated her right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments. She brought this suit against Defendant under 42 U.S.C. § 1983.[1]

On March 19, 2009, Defendant, a deputy with the Peach County Sheriff's Department, responded to an emergency call from Tracy Huckabee. Ms. Huckabee, Plaintiff's former sister in law, reported Plaintiff's possible suicide. (Doc. 8, Exh. A;

---

[1] In her complaint, Plaintiff also sought to "enforce rights under the Georgia Constitution and state law." Neither Plaintiff nor Defendant moved for summary judgment on the state law claims. As the Court ultimately finds that the case will be tried, Plaintiff's state law claims, to the extent there are any, will be heard at the trial of this case.

Doc. 24-3). Ms. Huckabee advised Defendant that Plaintiff had a history of suicide attempts and "[was] bipolar and [had been taking] medication."[2] (Doc. 8, Exh. A).

Upon arriving at the scene, Defendant unsuccessfully attempted to make contact with Plaintiff by knocking loudly on the kitchen, front, and back doors of her house. (Doc. 8, Exh. A). Next, Defendant opened the rear double doors enough to look into the house and "yell[ed] inside of the house identifying [himself] as a deputy sheriff." Id. Defendant then observed Plaintiff walking towards the opened doors and reported over his radio that he had contact with Plaintiff. Id. Plaintiff reached the doorway and warned Defendant not to enter her house. Id. Defendant asked Plaintiff to come outside to talk to Ms. Huckabee. Id.

The parties dispute what happened next. Plaintiff claims to have said that she did not want to talk to Ms. Huckabee. (Doc. 24-3). Defendant claims that Plaintiff yelled "get the fuck out of my house or I will –," and that she "suddenly turned back into the residence as if to obtain a weapon." (Doc. 8, Exh. A). Plaintiff contends that she made no movement of any sorts with her hands, that they were visible to Defendant throughout their encounter, and that she never turned back into the residence. (Doc. 24-3).

Defendant grabbed Plaintiff by the arm and led her outside as she resisted and "tried to break free of [his] grip." (Doc. 8, Exh. A). Defendant contends that he grabbed Plaintiff out of fear that she was going back into the residence to obtain a

---

[2]Plaintiff denies suffering from bipolar disorder, taking medication for such condition, or having a history of suicide attempts. (Doc. 24-3). She also states that she had not seen or spoken to Ms. Huckabee in months. (Doc. 24-3).

2

weapon. Id. Plaintiff contends that Defendant made no effort to search for weapons and did not act at any point like he was in fear for his safety. (Doc. 24-3). Plaintiff further contends that Defendant "shoved her on the back steps" and "got in [her] face, screaming that he was in charge and ordering [her] to shut up or be arrested." She also states that even after she told Defendant to get out of her home, he remained in her home for at least five minutes from the time he saw her and realized that she was not dead until he grabbed her and took her outside. Id. Defendant claims that Plaintiff approached him outside the house and started to "yell profanities" at him, after which he told her "that [was] enough" and to "be quiet." (Doc. 8, Exh. A).

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Id. at 254-55. The Court may not, however, make credibility

determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. *See* Avrigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B.      Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for summary judgment in her favor on liability. She contends that Defendant violated her constitutional rights when he remained in her home after determining she was alive. Defendant argues in response that he was entitled to remain in Plaintiff's home either as part of a Terry stop or under exigent circumstances. The Court finds that there is a genuine issue of material fact as to

4

whether Defendant properly remained in Plaintiff's home under exigent circumstances. Accordingly, Plaintiff's Motion for Partial Summary Judgment is denied.

1. Exigent circumstances

Exigent circumstances exist when "the exigencies of the situation make the needs of law enforcement" sufficiently compelling to justify a warrantless search. Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947 (2006). Exigencies justifying warrantless home entry exist when "the circumstances, viewed *objectively*, justify the action." Id. at 404 (emphasis in original). For instance, law enforcement officers may enter a home without a warrant to render emergency aid to an injured occupant or to protect an occupant from imminent injury. Id. The exigent circumstances exception also applies when there is a "danger to arresting officers or the public." United States v. Satterfield, 743 F.2d 827, 843-44 (11th Cir. 1984). Warrantless searches made under exigent circumstances must be "strictly circumscribed by the exigencies which justify [their] initiation." Mincey v. Arizona, 437 U.S. 385, 393, 93 S.Ct. 2408, 2414 (1978).

Plaintiff does not dispute that Defendant initially entered her home under exigent circumstances, performing an emergency-aid welfare check on a person Defendant believed to be suicidal and bipolar. Plaintiff argues, however, that any exigency expired once Defendant established contact with her.

Defendant claims that the exigent circumstances exception to the warrant requirement applies to all of his interactions with Plaintiff, even those after the initial

entry into her home and discovery that she was alive. He argues that exigent circumstances existed to as to allow him to remain in Plaintiff's home, as he had a duty to protect the welfare of Plaintiff and Ms. Huckabee and to investigate whether something was wrong with Plaintiff. Defendant argues that based on the emergency call, he already thought Plaintiff was mentally unstable, and Plaintiff's behavior after he arrived on the scene did not dispel the notion that she was mentally imbalanced and a possible danger to herself or others.

In 2006, the Florida Supreme Court heard a case with facts similar to those before the Court. Seibert v. State, 923 So.2d 460, 470 (Fla. 2006). In Seibert, the Florida court held that an emergency call stating that the defendant was suicidal, combined with his "strange behavior in not answering the door for four or five minutes after the officers first knocked, after which he immediately slammed the door," justified the officers' entry under exigent circumstances. Id. at 470. The court reached this conclusion by reasoning that, after observing the defendant's behavior, "the officers had no reason to doubt [the caller's] statement that the defendant was suicidal" and "could have reasonably thought that they would not get another opportunity to assist [the defendant] if they allowed him to [remain in his home]." Id. The Court finds Seibert persuasive and its reasoning applicable to the facts before it viewed in the light most favorable to Defendant.

The Court finds that there is a genuine issue of material fact as to whether Defendant was justified in remaining in Plaintiff's home after determining she was alive.[3]

**C.     Defendant's Motion for Summary Judgment**

As the Court has found that there is a triable issue of fact as to whether or not Defendant properly remained in Plaintiff's home, a jury could find Defendant liable to Plaintiff for violating her constitutional rights. Therefore, it is necessary for the Court to address the immunity arguments contained in Defendant's Motion for Summary Judgment.

   1. <u>Eleventh Amendment immunity</u>

Defendant first argues that he is immune from suit pursuant to the Eleventh Amendment. In Georgia, a sheriff and his deputies are considered constitutional officers. Because Defendant's alleged actions occurred as a constitutional officer in the course of his official duty, he claims immunity from liability for his alleged actions. Such immunity, however, only extends to Defendant in his official capacity; the Eleventh Amendment does not immunize constitutional officers in their individual capacities. <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003). Plaintiff seeks to hold Defendant liable in his individual capacity only. Accordingly, Defendant's immunity claim under the Eleventh Amendment is moot.

---

[3]Since there is an issue of fact for the jury as to whether Defendant properly remained in Plaintiff's home under the exigent circumstances exception, the Court will not address Defendant's <u>Terry</u> argument.

2. Qualified immunity

Defendant next claims qualified immunity from any individual liability. Qualified immunity shields government actors from liability for actions within the scope of their discretionary authority. Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002). If Defendant shows that he was acting within the scope of his discretionary authority he enjoys qualified immunity unless Plaintiff satisfies two conditions. First, Plaintiff must show that a constitutional violation actually occurred. Second, Plaintiff must establish that the official had "fair notice that [his] conduct [was] unlawful." To establish "fair notice," Plaintiff must show that the law prohibiting the relevant violation was clearly established. Id.

a. Scope of discretionary authority

Defendant contends that he was acting within the scope of his discretionary authority during his interactions with Plaintiff. She, however, disputes that Defendant was so acting.

A government official's discretionary authority extends to actions undertaken pursuant to the performance of his duties and within the scope of his authority. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994). Under Plaintiff's version of the facts, Defendant's actions up to and including establishing initial contact with her were within the scope of his discretionary authority, but his subsequent actions were not. Plaintiff claims that she asked Defendant to leave and neither turned her back to him nor threatened anyone. While Defendant states he believed Plaintiff was reaching for a weapon, Plaintiff's version of the facts does not support a reasonable

8

belief that Plaintiff was armed, reaching for a weapon or posing a threat to the safety of anyone at the scene. The Court finds Defendant was not acting within his discretionary authority when he remained in Plaintiff's house after determining she was alive.

The Eleventh Circuit in Thornton vs. City of Macon, 132 F.3d 1395, 1399-1400 (11th Cir. 1998), concluded that police officers acted outside the scope of their authority and exceeded the scope of their official duties by remaining on the plaintiff's property after he had asked them to leave. In reaching this conclusion, the court reasoned that "[the plaintiff] had committed no crime and had not threatened anyone; once he had asked the officers to leave, their continued presence [ . . . ] was not pursuant to their official duties and was outside of their authority. After that point, they were no longer maintaining the peace; they were instead merely attempting forcibly to resolve a civil dispute." Viewing the facts in the light most favorable to Plaintiff, and based on Thornton, the Court finds that Defendant has failed to establish that he was acting within the scope of his discretionary authority. This means Defendant is not entitled to qualified immunity. It is not necessary for the Court to address the remaining prongs of the qualified immunity test.

### III. CONCLUSION

Consistent with the foregoing, Plaintiff's Motion for Partial Summary Judgment (Doc. 7) is denied. Defendant's Motion for Summary Judgment (Doc. 15) is also denied. This case will be placed on the calendar for the September trial term.

9

**SO ORDERED**, this the 30th day of July, 2010.

                                      *s/ Hugh Lawson*
                                      **HUGH LAWSON, SENIOR JUDGE**

mbh/wef